[This opinion has been published in Ohio Official Reports at 78 Ohio St.3d 78.]

THE STATE EX REL. BURROWS, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE; AKRON CITY HOSPITAL, APPELLANT.

[Cite as *State ex rel. Burrows v. Indus. Comm*., 1997-Ohio-310.]

*Workers' compensation—Benefits—R.C. 4123.57(A) imposes a forty-week waiting period only for temporary total disability compensation paid specifically pursuant to R.C. 4123.56, notwithstanding that claimants cannot be paid living maintenance wage loss compensation and R.C. 4123.57(A) permanent partial disability compensation at the same time.*

(No. 94-2728—Submitted January 21, 1997—Decided March 26, 1997.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD11-1511.

————————————

{¶ 1} Akron City Hospital, appellant, seeks reversal of the Franklin County Court of Appeals' judgment granting Ruth Burrows, appellee, a writ of mandamus. The writ ordered the Industrial Commission of Ohio, appellee, to process Burrows's application for permanent partial disability compensation ("PPD"), which the commission had dismissed as untimely, and to determine her entitlement to this compensation.

{¶ 2} Burrows injured her back, shoulder, and hip in October 1987 while working at Akron City Hospital, a self-insured employer for the purpose of workers' compensation claims. After the allowance of her claim, Burrows received temporary total disability compensation ("TTD") pursuant to R.C. 4123.56(A) until November 4, 1990, when she entered a rehabilitation program. While participating in the rehabilitation program, Burrows received living maintenance benefits, available under R.C. 4121.63. She returned to work on January 14, 1991 and, due to her physical limitations, assumed a position that did not pay as well as her former

job. As a result, Burrows qualified for living maintenance wage loss compensation under R.C. 4121.67(B).

{¶ 3} On May 12, 1992, Burrows applied for the commission to determine the percentage of her permanent partial disability pursuant to R.C. 4123.57(A). The Administrator of the Bureau of Workers' Compensation initially awarded PPD in a "tentative" order. On the hospital's objections to the order, a commission district hearing officer determined Burrows's percentage of permanent partial disability to be eighteen percent and granted her application for PPD. The hospital requested reconsideration, arguing that (1) R.C. 4123.57(A) claimants could not apply for PPD under the statute until forty weeks after their last payment for living maintenance wage loss compensation, and (2) Burrows had filed her application while still receiving this compensation. A commission staff hearing officer agreed with the hospital and dismissed Burrows's application as untimely on the authority of R.C. 4121.63, 4121.67(B), and 4123.57.

{¶ 4} Burrows then requested the instant writ in the court of appeals. She argued that the R.C. 4123.57(A) application process imposed a forty-week waiting period only with respect to TTD paid pursuant to R.C. 4123.56. A referee disagreed, finding that R.C. 4123.57, when read *in pari materia* with R.C. 4121.63 and 4121.67(B), imposed the waiting period with respect to payments for living maintenance and living maintenance wage loss compensation as well as compensation payable under R.C. 4123.56. The referee recommended denial of all relief, but on Burrows's objections, the court of appeals rejected the referee's analysis. Citing the plain language of R.C. 4123.57, the court granted the writ and returned the cause to the commission for an appropriate determination of Burrows's PPD eligibility.

{¶ 5} The cause is before this court upon an appeal as of right.

_____

*Ben Sheerer Law Offices* and *Thomas R. Pitts*, for appellee Burrows.

*Betty D. Montgomery*, Attorney General, and *Melanie Cornelius*, Assistant Attorney General, for appellee Industrial Commission.

*Buckingham, Doolittle & Burroughs*, *A L. P.A.,* and *Deborah Sesek*, for appellant.

––––––––––––––––––

*Per Curiam.*

{¶ 6} Two issues are presented for our review: (1) Did the commission err in dismissing Burrows's PPD application as untimely? and (2) Are claimants eligible for PPD under R.C. 4123.57(A) if receiving living maintenance wage loss compensation under R.C. 4121.67(B)?  For the reasons that follow we hold that R.C. 4123.57(A) imposes the forty-week waiting period only for TTD paid specifically pursuant to R.C. 4123.56, notwithstanding that claimants cannot be paid living maintenance wage loss compensation and R.C. 4123.57(A) PPD at the same time.  Accordingly, we affirm.

*R.C. 4123.57 Waiting Period*

{¶ 7} The General Assembly established the forty-week waiting period in R.C. 4123.57 for PPD applications to ensure permanency at the time of the determination.  Fulton, Ohio Workers' Compensation Law (1991) 203, Section 9.11.  The statute provided:

"Partial disability compensation shall be paid as follows.

"*Not earlier than forty weeks after the date of termination of the latest period of payments under section 4123.56 of the Revised Code*, or not earlier than forty weeks after the date of the injury or contraction of an occupational disease in the absence of payments under section 4123.56 of the Revised Code, *the employee may file an application with the industrial commission for the determination of the percentage of his permanent partial disability resulting from the injury* or occupational disease." (Emphasis added.) 141 Ohio Laws, Part I, 767.

{¶ 8} The court of appeals applied R.C. 4123.57 precisely as written and determined that only a claimant's receipt of TTD under R.C. 4123.56 invoked the forty-week application waiting period. The court thus held that Burrows's receipt of R.C. 4121.67(B) living maintenance wage loss compensation as of the date of her PPD application did not render the application untimely. Burrows uses the same analysis to urge us to affirm.

{¶ 9} But the hospital and commission insist that the analysis is more difficult. They argue that when R.C. 4123.57 is read *in pari materia* with R.C. 4121.63 and 4121.67(B), the result is a waiting period that applies to living maintenance and living maintenance wage loss compensation because both are to be considered forms of TTD under R.C. 4123.56. Their reasoning is syllogistic:

1. R.C. 4121.67(B) directs that living maintenance wage loss compensation be paid "in the same manner as living maintenance payments are made pursuant to [R.C. 4121.63]"; and

2. R.C. 4121.63 provides that "[a] claimant receiving living maintenance payments shall be deemed to be temporarily totally disabled and shall receive no payment of any type of compensation except as provided by [R.C. 4123.57(B) (scheduled losses)] * * * [while] receiving living maintenance payments"; therefore,

3. A claimant receiving living maintenance wage loss compensation is "deemed" temporarily totally disabled for all purposes, including the R.C. 4123.57 waiting period, and, further, is ineligible for all compensation except R.C. 4123.57(B) scheduled losses.

{¶ 10} The General Assembly may have anticipated that living maintenance compensation paid pursuant to R.C. 4121.63 and living maintenance wage loss compensation paid pursuant to R.C. 4121.67(B) would always be treated as forms of TTD. However, in determining legislative intent, we must first look to the plain language of R.C. 4123.57. "If the meaning of the statute is unambiguous and

4

definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn*. (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463, 465. Unambiguous statutes are to be applied according to the plain meaning of the words used, *Roxane Laboratories, Inc. v. Tracy* (1996), 75 Ohio St.3d 125, 127, 661 N.E.2d 1011, 1012, and courts are not free to delete or insert other words, *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn*. (1994), 69 Ohio St.3d 217, 220, 631 N.E.2d 150, 153.

{¶ 11} The R.C. 4123.57(A) waiting period is not ambiguous—it averts PPD applications for forty weeks after a claimant stops receiving "payments under section 4123.56 of the Revised Code." The statute does not mention R.C. 4121.63 or 4121.67(B). Moreover, payments available under R.C. 4123.56 are basically of two types—division (A) compensates claimants for wages lost due to an incapacity to work at their former jobs, and division (B) compensates claimants who are capable of other employment and suffer a wage loss. Neither type of compensation incorporates the further requirement, as do R.C. 4121.63 and 4121.67(B), that the claimant participate in a rehabilitation program. Thus, for whatever reason claimants are "deemed" temporarily and totally disabled by virtue of having been paid living maintenance compensation or living maintenance wage loss compensation, this compensation is not payable "under" R.C. 4123.56 as that term is used in R.C. 4123.57.

{¶ 12} The *in pari materia* rule of construction may be used in interpreting a statute, but first some doubt or ambiguity must exist. *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 585, 651 N.E.2d 995, 998. Here, the R.C. 4123.57 waiting period becomes subject to different interpretations—whether it applies exclusively to claimants receiving R.C. 4123.56 compensation or also to claimants receiving R.C. 4121.63 and 4121.67(B) compensation—only because R.C. 4121.63, which R.C. 4123.57 does not incorporate, declares these claimants

alike. Thus, in this instance, the *in pari materia* rule actually creates the ambiguity that the hospital and commission urge us to resolve.

{¶ 13} For these reasons, we are not obligated to defer to the commission's interpretation of the R.C. 4123.57 waiting period. In its Policy Statement and Guideline issued January 1, 1989, the commission pronounced that applications for percentage of permanent disability compensation could not be filed until forty weeks after the date of the last payment of living maintenance compensation. This policy statement contravenes the express language of R.C. 4123.57 and, therefore, must yield to the higher authority. See, *e.g., State ex rel. Crabtree v. Ohio Bur. of Workers' Comp.* (1994), 71 Ohio St.3d 504, 644 N.E.2d 361.

{¶ 14} Burrows received her last payment under R.C. 4123.56 on November 4, 1990. She applied for PPD under R.C. 4123.57(A) on May 12, 1992, long past the forty-week waiting period. Her application, therefore, was not untimely.

*Receipt of R.C. 4123.57(A) and 4121.67(B) Compensation*

{¶ 15} The hospital and commission also argue that Burrows cannot receive living maintenance wage loss compensation while she is receiving percentage of permanent partial disability payments under R.C. 4123.57(A). This time, plain statutory language supports their position.

{¶ 16} R.C. 4121.67(B) requires that living maintenance wage loss compensation be paid "in the same manner" as living maintenance compensation is paid pursuant to R.C. 4121.63. R.C. 4121.63 precludes "payment of any type of compensation except as provided by division (B) of section 4123.57 of the Revised Code for the periods during which the claimant is receiving living maintenance payments." Thus, percentage of permanent partial disability awards under R.C. 4123.57(A) cannot be paid to claimants receiving either living maintenance or living maintenance wage loss compensation.

**{¶ 17}** Having found that R.C. 4123.57(A) imposes the forty-week waiting period only for TTD paid specifically pursuant to R.C. 4123.56, notwithstanding that claimants cannot be paid living maintenance wage loss compensation and R.C. 4123.57(A) PPD at the same time, we affirm the judgment of the court of appeals that grants a writ of mandamus to compel the commission's further consideration of Burrows's PPD application.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————