JOURNAL ENTRY and OPINION.
{¶ 1} Plaintiff-appellant Joseph C. Davis ("Davis") appeals the trial court's grant of summary judgment in favor of defendant-appellees Taylor Bogus Foundry and the Bureau of Workers' Compensation ("BWC"). We find no merit to the appeal and affirm.
 {¶ 2} Davis, who is 73 years old, worked at several different manufacturing plants from 1949 to 1981, where he was exposed to asbestos.
 {¶ 3} In March 1996, Davis had an x-ray taken of his chest. It is undisputed that on April 8, 1996, Dr. Phillip Lucas ("Dr. Lucas") issued a report which stated the following: "Pleural and interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latent period."
 {¶ 4} On September 25, 1998, Davis consulted Dr. L.C. Rao ("Dr. Rao"), a pulmonologist, who reviewed his chest x-ray, took a detailed occupational history, examined him, and interpreted the results from a pulmonary function test. Based upon this evaluation, Dr. Rao issued a report in which he stated:
"On the basis of medical history review which is inclusive of asignificant exposure to asbestos dust, the physical exam, the chestradiograph and the pulmonary function testing, a diagnosis of asbestosisis established within a reasonable degree of medical certainty."
 {¶ 5} On July 23, 1999, Davis filed his claim for workers' compensation benefits by filing a FROI-1 form entitled "First Report of an Injury, Occupational Disease or Death" with the Industrial Commission of Ohio. In response to a question on the form inquiring about "Type of Injury/Disease and Part(s) of Body Affected," Davis indicated that he was filing a claim for "Asbestosis." Davis further declared on the form: "[C]laimant was occupationally exposed to asbestos during the course and scope of his employment, which resulted in the development of asbestosis." When responding to the question "Date of Injury/ Disease," Davis stated "04/08/96." Davis then signed and dated the form "4/21/99." It is undisputed that Davis did not file the form until July 1999.
 {¶ 6} In support of his claim for asbestosis, Davis attached to the FROI-1 a copy of the April 1996 medical report from Dr. Lucas. Davis' claim proceeded through the Industrial Commission and was denied at each stage of the administrative process. Davis next filed an administrative appeal to the Cuyahoga County Common Pleas Court. The BWC filed a motion for summary judgment, arguing that Davis failed to file his application for workers' compensation benefits within the statute of limitations set forth in R.C. 4123.85.
 {¶ 7} Davis filed a brief in opposition to this motion for summary judgment, arguing that he timely filed his workers' compensation claim. The BWC filed a reply brief and Davis filed a sur-reply brief. The BWC then filed a brief in response to Davis' sur-reply. Davis then filed a motion to strike the BWC brief in response to his sur-reply brief and all exhibits attached thereto on grounds that the brief was not signed and the exhibits were not properly authenticated as required by Civ.R. 56(C). The exhibits included an opinion from the Mahoning County Common Pleas Court and a consolidated complaint asserting a product liability tort claim on behalf of Davis in the Cuyahoga County Common Pleas Court. In this consolidated complaint, Davis sought damages against 109 defendants for his condition of asbestosis and asbestos-related diseases.
 {¶ 8} The consolidated complaint was prepared by and filed by the same lawyers representing Davis in the instant administrative appeal. Davis filed the consolidated complaint on April 7, 1998, one day short of two years from the date of Dr. Lucas' April 1996 report.
 {¶ 9} The trial court granted the BWC's motion for summary judgment without opinion or findings of fact and conclusions of law. Davis raises one assignment of error on appeal.
 Standard of Review {¶ 10} "In reviewing a summary judgment, an appellate court conducts a de novo review of the trial court's decision." Hoyt v. Gordon Assoc. (1995), 104 Ohio App.3d 589, 602. Therefore, a court reviewing the granting of a summary judgment must follow the standards set forth in Civ.R. 56(C). To grant a motion for summary judgment, a court must find that: (1) no genuine issue as to any material fact remains to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the non-movant, reasonable minds could conclude only for the movant. Civ.R. 56(C); Morely v. Lordi (1995), 72 Ohio St.3d 510, 512.
 {¶ 11} Pursuant to Civ.R. 56, the BWC, as the moving party, bore the initial burden of informing the court as to the basis for the summary judgment motion and identifying those portions of the record that demonstrated the absence of a genuine issue of material fact. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293. The moving party cannot discharge its initial burden under Civ.R. 56(C) simply by making the conclusory assertion that the non-movant has no evidence to prove its case. Id. Instead, the moving party must point to permissible evidence that affirmatively demonstrates that the non-moving party has no evidence to support its claims. Id. Only if the moving party satisfies its initial burden must the non-moving party set forth specific facts that show a genuine issue of fact for trial. Id.
 Statute of Limitations {¶ 12} In his sole assignment of error, Davis argues the trial court erred when it found he filed his workers' compensation claim outside the applicable statute of limitations set forth in R.C. 4123.85.
 {¶ 13} R.C. 4123.85, which establishes the time period for the filing of workers' compensation claims alleging disability due to an occupational disease, provides in pertinent part, as follows:
"In all cases of occupational disease * * * claims for compensation or benefits are forever barred unless, within two years after the disability due to the disease began, or within such longer period as does not exceed six months after diagnosis of the occupational disease by a licensed physician * * * application is made to the industrial commission or the bureau of workers' compensation * * *."
 {¶ 14} The Ohio Supreme Court reviewed and interpreted R.C. 4123.85
in the seminal case of White v. Mayfield (1988), 37 Ohio St.3d 11. Because the term "disability" is not defined in Chapter 4123, the Ohio Supreme Court adopted a standard to govern the date that disability due to an occupational disease begins. In White, the Court held:
"* * * disability due to an occupational disease shall be deemed tohave begun on the date on which the claimant first became aware throughmedical diagnosis that he or she was suffering from such disease, or thedate on which claimant first received medical treatment for suchdisease, or the date on which the claimant first quit work on account ofsuch disease, whichever date is latest."
Id. at syllabus.
 Diagnosis {¶ 15} The first prong of the White analysis focuses on the date of diagnosis. Davis argues he was not diagnosed with asbestosis until Dr. Rao examined him on September 28, 1998, because Dr. Rao conducted a physical examination and a pulmonary function test at that time. Davis further argues that Dr. Lucas did not diagnose asbestosis in April 1996 because Dr. Lucas did not examine him or obtain an occupational history.
 {¶ 17} In support of this argument, Davis submitted deposition transcripts from unrelated cases. These transcripts contained the deposition testimony of Dr. Schonfeld and Dr. Grodner, who testified that a simple x-ray by itself is not sufficient to diagnose asbestosis. Both Dr. Schonfeld and Dr. Grodner stated that a B-read (x-ray) showing abnormalities plus an occupational history of exposure are necessary to make a diagnosis of asbestosis. Dr. Schonfeld testified:
"So in order to make a definite diagnosis, it's important that you want to have the x-ray showing the findings consistent with asbestos, but also examining and talking to the patient to see whether or not they have an exposure that is consistent with the x-ray."
 {¶ 18} In his April 1996 report, Dr. Lucas stated the following as to Davis' condition: "Pleural and interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latent period." Thus, in rendering his opinion, Dr. Lucas had a B-read (x-ray) which he considered consistent with asbestosis and he stated that Davis had "an adequate exposure history" which proved consistent with the development of asbestosis. These are the very elements both Dr. Grodner and Dr. Schonfeld listed as necessary for a diagnosis. Therefore, we find Dr. Lucas' April 1996 report constituted evidence of a diagnosis of asbestosis.
 {¶ 19} Davis also argues the trial court erred when it considered the exhibits attached to the BWC's response to Davis' sur-reply brief because the BWC's brief was not signed as required by Civ.R. 11 and because the exhibits were not authenticated. However, a review of the record reveals that the response the BWC filed with the court was signed by the attorney as required by Civ.R. 11. Therefore, it was properly considered by the court.
 {¶ 20} The exhibits attached to the response included an opinion from the Mahoning County Common Pleas Court and a consolidated complaint filed by Davis' lawyers on his behalf in the Cuyahoga County Common Pleas Court asserting product liability claims arising from Davis' asbestosis condition. The opinion from Mahoning County is not a factual exhibit but rather a source of legal authority, and, therefore, it is not subject to the mandates of Civ.R. 56(C).
 {¶ 21} Further, we find it disingenuous that Davis' counsel would question the authenticity of the consolidated complaint when one of the signatories of Davis' appellate brief is also a signatory of the complaint. Pursuant to Civ.R. 11, pleadings such as the consolidated complaint need not be verified or accompanied by affidavit. Civ.R. 11. The Staff Notes to Civ.R. 11 explain: "The rule places the burden of truthfulness of the pleadings on the attorney — where the responsibility belongs. In effect, his signature, he being an officer of the court, is the verification." Moreover, in State ex rel. Spencer v.E. Liverpool Planning Comm. (1997), 80 Ohio St.3d 297, the Ohio Supreme Court held that sworn pleadings constitute evidence for purposes of Civ.R. 56(C), in addition to affidavits. Therefore, the trial court properly considered the consolidated complaint, which was a verified complaint.
 {¶ 22} The consolidated complaint was filed on April 7, 1998, which was one day short of two years from the date of Dr. Lucas' report. In the complaint, Davis alleged he "contracted asbestosis and asbestos related diseases which caused him great pain and suffering * * *." Davis also alleged that during the course of his employment he was exposed to asbestos.
 {¶ 23} This consolidated complaint is extremely detailed, consisting of thirty-nine (39) counts, with no other disease listed other than "asbestosis, cancers and asbestos related diseases." Thus, as of April 7, 1998, Davis specifically alleged that he suffered from asbestosis and asbestos-related diseases as a result of exposure to asbestos at his place of employment.
 {¶ 24} As previously mentioned, Dr. Lucas evaluated Davis' chest x-ray and concluded on April 8, 1996, that Davis had "Pleural and interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latent period." Davis argues he was not really diagnosed with asbestosis until he saw Dr. Rao on September 25, 1998, five months after filing the consolidated complaint. Because Dr. Lucas was the only physician to diagnose Davis' medical condition prior to the April 7, 1998 filing of the consolidated complaint, Davis must have relied upon Dr. Lucas' diagnosis in forming the basis for his consolidated complaint. We, therefore, conclude that Davis' consolidated complaint is additional evidence that he was diagnosed with asbestosis on April 8, 1996.
 Treatment {¶ 25} The second prong of the White test concerns the "date on which claimant first received medical treatment for such disease." The term "treatment" is not defined in R.C. 4123.85 or in the White
decision. This court and the Ohio Supreme Court have both defined "treatment" in the context of workers' compensation laws as steps taken to cure an injury or disease. Cestone v. Wylie (1959), 169 Ohio St. 182;Biddle v. General Dynamics Land Systems, 3rd Dist No. 1-91-22, 1991 Ohio App. Lexis 6201, at *5, citing Bradley v. Connor (Nov. 8, 1984), Cuyahoga App. No. 48005.
 {¶ 26} In Biddle, the court adopted the ordinary meaning of the word "treatment" as defined in Black's Law Dictionary. Specifically, it defined "treatment" as: "A broad term covering all the steps taken to effect a cure of an injury or disease; including examination and diagnosis as well as application of remedies."
 {¶ 27} The x-ray taken on March 28, 1996 and reported in Dr. Lucas' April 1996 report was a step taken with respect to Davis' treatment. Davis does not argue that treatment began in some other fashion, but argues it began in September 1998 when he sought treatment and diagnosis from Dr. Rao. To deny that the x-ray taken on March 28, 1996 was taken in an effort to treat his condition would require the court to conclude that he underwent a chest x-ray in March 1996 for no reason or purpose. Therefore, we find the trial court correctly concluded that Davis was first treated for asbestosis in April 1996.
 Quit Work {¶ 28} The third prong of the White test concerns the date the claimant quit working as a direct result of the occupational disease. It is undisputed that Davis' employment ended in 1985, several years before he was diagnosed with and treated for asbestosis. Davis argues that because he was retired and did not quit as a result of the occupational disease, the third prong of the White test has not yet occurred and the statute of limitations has not even begun to run. In support of this argument, he relies on a resolution of the Industrial Commission which states, in part, that where an employee retired prior to being diagnosed with an occupational disease that involves a long latency period, that claim is timely filed.
 {¶ 29} However, a policy statement does not constitute controlling legal authority for this court. The Ohio Supreme Court has held that policy statements (which do not even rise to the level of an administrative rule) issued by state administrative authorities must yield to the higher authority of the courts of Ohio. Burrows v.Industrial Commission (1997), 78 Ohio St.3d 78. If an administrative policy conflicts with a statute, rule, or court decision, the policy must be repudiated. Id.
 {¶ 30} In Heard v. Conrad (2000), 138 Ohio App.3d 503, appeal dismissed, 89 Ohio St.3d 1454, the court, applying White's three prong test, upheld the trial court's award of summary judgment in favor of the employer and held that the claimant failed to timely file his claim based on the occupational disease of asbestosis. In reaching its conclusion, the Heard court explained:
"* * * It is not necessary to meet all three elements of the White testbefore filing an occupational disease claim. A claimant may opt to filewithin two years of treatment or within two years of diagnosis or withintwo years after the claimant was forced out of his job due to the affectsof his occupational disease, whichever is later. The third White elementis, of necessity, inapplicable to a retiree who is diagnosed and treatsafter his or her voluntary retirement. In so doing, we are stillrecognizing the long latency of most occupational diseases and theinsidious nature of their onset. Our ruling does not foreclose an illretiree from filing for his or her rightful benefits. That retiree mustsimply file within two years of treatment or two years of diagnosis,whichever is later." Id. at 509.
 {¶ 31} Davis argues the Heard case discriminates against retirees. Specifically, he claims the Heard case creates "two classes of workers' compensation claimants — retirees and non-retirees — and unilaterally revokes a right of a senior citizen merely because the individual has retired from active employment prior to being diagnosed with an occupational disease that is associated with an extremely long latency period." We disagree.
 {¶ 32} The Heard court plainly stated that it was not depriving retirees of their right to pursue their claims for occupational diseases. The court stated, "Our ruling does not foreclose an ill retiree from filing for his or her rightful benefits. That retiree must simply file within two years of treatment or two years of diagnosis, whichever is later." To follow Davis' argument that the statute of limitations does not run for retirees because the third prong of the White test has not yet been met would vitiate the statute of limitations altogether. This was clearly not the intent of the legislature when it set forth the statute of limitations in R.C. 4123.85 or the intent of the Supreme Court in White.
 {¶ 33} Under Heard, the third prong of the White test is inapplicable to the facts of this case. Because Davis was diagnosed with and treated for asbestosis in April 1996, over three years before filing his workers' compensation claim, Davis' claim is barred by the statute of limitations.
 {¶ 34} Accordingly, the sole assignment of error is overruled.
KENNETH A. ROCCO, P.J. and FRANK D. CELEBREZZE, JR., J. concur.